UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RYAN O'DELL, | : |
| Plaintiff, | : Case No. 1:22-cv-10202 |
| v. | : |
| OYSTER POINT PHARMA, INC., DONALD J. SANTEL, JEFFREY NAU, PH.D., MICHAEL G. ATIEH, ALI BEHBAHANI, MD., MARK MURRAY, CLARE OZAWA, PH.D., BENJAMIN TSAI, AIMEE WEISNER, and GEORGE ELIADES, PH.D., | : **COMPLAINT FOR VIOLATIONS OF SECTIONS 14(e), 14(d) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>**JURY TRIAL DEMANDED** |
| Defendants. | : |

Ryan O'Dell ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against Oyster Point Pharma, Inc. ("Oyster Point or the "Company") and the members Oyster Point board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(e), 14(d), and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), in connection with the proposed acquisition of Oyster Point by affiliates of Viatris Inc. ("Viatris").

2. Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Solicitation Statement on Schedule 14D-9 (the "Solicitation Statement") to be filed on December 1, 2022 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders. The Solicitation

Statement recommends that Company stockholders tender their shares in support of a proposed transaction whereby Iris Purchaser Inc. ("Purchaser"), a wholly owned subsidiary of Viatris, will merge with and into Oyster Point, with Oyster Point continuing as the surviving corporation and as a wholly owned subsidiary of Viatris (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into, dated November 7, 2022 (the "Merger Agreement"), each Oyster Point common share issued and outstanding will be converted into the right to receive: (i) $11.00 per share owned; plus (ii) one non-transferable contractual contingent value right ("CVR") representing the right to receive contingent payments of $1.00 or $2.00 in cash per CVR in accordance with the terms and subject to the CVR Agreement (the "Merger Consideration"). In accordance with the Merger Agreement, Purchaser commenced a tender offer to acquire all of Oyster Point's outstanding common stock and will expire on December 30, 2022 (the "Tender Offer").

3.   Defendants have now asked Oyster Point's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Solicitation Statement, in violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act.  Specifically, the Solicitation Statement contains materially incomplete and misleading information concerning, among other things, (i) Oyster Point's financial projections relied upon by the Company's financial advisor, Centerview Partners LLC ("Centerview"); and (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by Centerview. The failure to adequately disclose such material information constitutes a violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act as Oyster Point stockholders need such information in order to tender their shares in support of the Proposed Transaction.

4. It is imperative that the material information that has been omitted from the Solicitation Statement is disclosed to the Company's stockholders prior to the expiration of the tender offer.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Oyster Point's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(e), 14(d), and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because each is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Plaintiff resides in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of Oyster Point common stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant Donald J. Santel has served as a member of the Board since August 2021 and is the Chairperson of the Board.

11. Individual Defendant Jeffrey Nau, Ph.D., MMS has served as a member of the Board since October 2017 and is the Company's President and Chief Executive Officer.

12. Individual Defendant Michael G. Atieh has served as a member of the Board since October 2020.

13. Individual Defendant Ali Behbahani, MD has served as a member of the Board since July 2017.

14. Individual Defendant Mark Murray has been a member of the Board since October 2017.

15. Individual Defendant Clara Ozawa, Ph.D. served as a member of the Board since February 2019.

16. Individual Defendant Benjamin Tsai served as a member of the Board since February 2019.

17. Individual Defendant Aimee Weisner served as a member of the Board since Octoeber 2019.

18. Individual Defendant George Eliades, Ph.D. served as a member of the Board since April 2021.

19. Defendant Oyster Point is incorporated in Delaware and maintains its principal offices at 202 Carnegie Center, Suite 106, Princeton, New Jersey 08540.  The Company's common stock trades on the NASDAQ Global Select Market under the symbol "OYST."

20. The defendants identified in paragraphs 10-18 are collectively referred to as the "Individual Defendants" or the "Board."

21. The defendants identified in paragraphs 10-19 are collectively referred to as the "Defendants."

**SUBSTANTIVE ALLEGATIONS**

A.    <u>The Proposed Transaction</u>

22.    Oyster Point, a commercial-stage biopharmaceutical company, focuses on the discovery, development, and commercialization of pharmaceutical therapies to treat ophthalmic diseases in the United States. The Company's product candidate is TYRVAYA, a nicotinic acetylcholine receptor agonist for the treatment of signs and symptoms of dry eye disease. It is also developing TYRVAYA that is in Phase II clinical trial for the treatment of for neurotrophic keratopathy. The Company was incorporated in 2015 and is headquartered in Princeton, New Jersey.

23.    On November 7, 2022, the Company announced the Proposed Transaction:

> PRINCETON, N.J., Nov. 07, 2022 (GLOBE NEWSWIRE) -- Oyster Point Pharma, Inc. (Nasdaq: OYST), ("Oyster Point Pharma"), today announced that it has entered into a definitive agreement under which Viatris Inc. (Nasdaq: VTRS), a global healthcare company, would acquire Oyster Point Pharma, a commercial-stage biopharmaceutical company focused on the discovery, development and commercialization of first-in-class pharmaceutical therapies to treat ophthalmic diseases. Viatris intends to acquire Oyster Point Pharma as the foundation of its new ophthalmology franchise, recognizing its uniquely talented team, the strength of TYRVAYA® (varenicline solution) Nasal Spray and Oyster Point Pharma's pipeline.
>
> Under the terms of the agreement, Viatris will commence a tender offer to purchase all outstanding shares of Oyster Point Pharma for $11.00 per share in cash at closing, plus a contingent value right ("CVR") for a potential cash payment of up to $2.00 per share upon achievement of specified performance targets by Oyster Point Pharma for full year 2022.

The transaction was unanimously approved by the Oyster Point Pharma Board of Directors.

"Oyster Point Pharma brings to Viatris the strength of TYRVAYA Nasal Spray, the first and only FDA-approved nasal spray for dry eye in the U.S., an eye care focused pipeline, and a very experienced team that possesses extensive knowledge of the ophthalmology space from a clinical, medical, regulatory and commercial perspective," said Michael Goettler, chief executive officer of Viatris. "Together, we believe we are setting the foundation for the next global ophthalmology leader, accelerating efforts to address the unmet needs of patients with ophthalmic disease and the eye care professionals who treat them, and positioning Viatris for growth."

"We are pleased to announce Viatris' proposed acquisition of Oyster Point Pharma, recognizing the exciting opportunities that lie ahead of us," said Jeffrey Nau, Ph.D., MMS, president and chief executive officer of Oyster Point Pharma. "Through our efforts to license our innovations globally, we recognized that Viatris would be an optimal partner with its Global Healthcare Gateway. With Viatris' global capabilities and commitment to ophthalmology, we expect to be able to expand TYRVAYA's impact on the dry eye landscape and accelerate our exciting pipeline. With our combined sector expertise, innovation, scale, pipeline and global commercial reach, we expect to build a world-class ophthalmology business to meaningfully shape the future of eye care, to the benefit of patients."

In November 2021, Oyster Point Pharma launched TYRVAYA, the first and only FDA-approved nasal spray for the treatment of the signs and symptoms of dry eye disease. In addition, Oyster Point Pharma has a growing pipeline of clinical and pre-clinical programs aimed at delivering transformative innovation for ocular surface diseases. In addition to TYRVAYA, Oyster Point Pharma has three drug candidates in its pipeline: two investigational therapies for neurotrophic keratopathy, a severe degenerative condition affecting the nerves of the cornea, and another for vernal/atopic keratoconjunctivitis, a severe allergic condition of the eyes.

**Transaction Terms and Financing**
Under the terms of the agreement, Viatris will initiate a tender offer to acquire all of the outstanding shares of Oyster Point Pharma's common stock at a price of $11.00 per share in cash at closing, plus a contingent value right ("CVR") representing the right to receive a potential cash payment of up to $2.00 per share. The amount (if any) payable under the CVR will be based on the following performance targets to be achieved by Oyster Point Pharma for full year 2022:

- An additional $1.00 per share in cash if Oyster Point Pharma generates equal to or greater than $21.6 million of net product revenue and 131,822 total prescriptions of TYRVAYA; or
- An additional $2.00 per share in cash if Oyster Point Pharma generates equal to or greater than $24.0 million of net product revenue and 146,469 total prescriptions of TYRVAYA.

The transaction is subject to customary closing conditions, including the expiration or termination of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, and the tender of a majority of the outstanding shares of Oyster Point Pharma's common stock. Oyster Point Pharma stockholders holding approximately 46% of Oyster Point Pharma's common stock have entered into a tender and support agreement with Viatris, pursuant to which such stockholders have agreed, among other things, to tender 100% of their shares of Oyster Point Pharma's common stock in the tender offer, subject to the terms and conditions of such agreement.

Following the successful closing of the tender offer, Viatris will acquire all remaining shares of Oyster Point Pharma's common stock that are not tendered into the tender offer through a second-step merger at the same price of $11.00 per share, plus a CVR representing the right to receive up to $2.00 per share.

The transaction is anticipated to close during the first quarter of 2023.

**Earnings Conference Call**
Given the proposed transaction, Oyster Point Pharma will not be hosting the previously scheduled earnings conference call on Thursday, November 10, 2022.

**Advisors**
Centerview Partners LLC is serving as the exclusive financial advisor to Oyster Point Pharma, and Cooley LLP is serving as legal counsel. Citigroup Global Markets Inc. is serving as the exclusive financial advisor to Viatris, and Cravath, Swaine & Moore LLP is serving as legal counsel.

* * *

24. It is therefore imperative that Oyster Point's stockholders are provided with the material information that has been omitted from the Solicitation Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests.

B. **The Materially Incomplete and Misleading Solicitation Statement**

25. On December 2, 2022, Oyster Point filed the Solicitation Statement with the SEC in connection with the Proposed Transaction. The Solicitation Statement was furnished to the Company's stockholders and solicits the stockholders to tender their shares in support of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Solicitation Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Solicitation Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to tender their shares, in violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

26. The Solicitation Statement fails to provide material information concerning financial projections by Centerview management and relied upon by Centerview in its analysis. The Solicitation Statement discloses management-prepared financial projections for the Company which are materially misleading. The Solicitation Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and Centerview with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Oyster Point management provided to the Board and Centerview. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own

8

estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

27. For the Company Projections, the Solicitation Statement provides values for the non-GAAP (Generally Accepted Accounting Principles) financial metric Unlevered Free Cash Flow ("UFCF"), but fails to provide line items used to calculate the metrics, the definition of UFCF, and a reconciliation of the non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

28. When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

29. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other

non-discretionary expenditures that are not deducted from the measure.[1]

30. Thus, to cure the Solicitation Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Solicitation Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Solicitation Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Centerview's Financial Analysis*

31. With respect to Centerview's *Selected Public Company Analysis*, the Solicitation Statement fails to disclose the financial metrics for each comparable company selected by Centerview for the analysis.

32. With respect to Centerview's *Selected Precedent Transactions Analysis*, the Solicitation Statement fails to disclose: (i) the number of fully-diluted outstanding Shares of Company stock as of November 4, 2022; and (ii) the financial metrics used to calculated the transaction value for each selected company.

33. With respect to Centerview's *Discounted Cash Flow Analysis*, the Solicitation Statement fails to disclose: (i) the inputs and assumptions underlying the discount rates ranging from 14.5% to 17.5%; (ii) the implied terminal value of the Company; (iii) the Company's weighted average cost of capital; (iv) the basis for assuming that the rate of free cash flow would decline 50% year-over-year in perpetuity after December 31, 2037; (v) the number of fully diluted outstanding shares of Oyster Point as of November 4, 2022; (vi) the expected dilutive effect of the 2022 and 2023 equity raises; and (vii) the tax savings from usage of Oyster Point's federal net

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

operating losses of $203 million as of December 31, 2021 as well as the benefit from estimated 2022 and 2023 federal net operating losses.

34. With respect to Centerview's *Analyst Price Target Analysis*, the Solicitation Statement fails to disclose: (i) the Wall Street research analysts reviewed; and (ii) the stock price targets published by each analyst.

35. With respect to Centerview's *Precedent Premiums Paid Analysis*, the Solicitation Statement fails to disclose: (i) the transactions selected; (ii) the premiums paid in those transactions; and (iii) the basis for applying a range of 30% to 50% to Oyster Point's closing stock price on November 4, 2022.

36. In sum, the omission of the above-referenced information renders statements in the Solicitation Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the expiration of the Tender Offer, Plaintiff will be unable to make a fully-informed decision regarding whether to tender their shares, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for
Violations of Section 14(e) of the Exchange Act**

37. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

38. Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . ." 15 U.S.C. § 78n(e).

39. Defendants violated Section 14(e) of the Exchange Act by issuing the Solicitation Statement in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, in conjunction with the Tender Offer. Defendants knew or recklessly disregarded that the Solicitation Statement failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

40. The Solicitation Statement was prepared, reviewed and/or disseminated by Defendants. It misrepresented and/or omitted material facts, including material information about the consideration offered to stockholders via the Tender Offer, the intrinsic value of the Company, the Company's financial projections, and the financial advisor's valuation analyses and resultant fairness opinion.

41. In so doing, Defendants made untrue statements of material fact and omitted material information necessary to make the statements that were made not misleading in violation of Section 14(e) of the Exchange Act. By virtue of their positions within the Company and/or roles in the process and in the preparation of the Solicitation Statement, Defendants were aware of this information and their obligation to disclose this information in the Solicitation Statement.

42. The omissions and misleading statements in the Solicitation Statement are material in that a reasonable stockholder would consider them important in deciding whether to tender their shares or seek appraisal. In addition, a reasonable investor would view the information identified above which has been omitted from the Solicitation Statement as altering the "total mix" of information made available to stockholders.

43. Defendants knowingly, or with deliberate recklessness, omitted the material information identified above from the Solicitation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Tender Offer, they allowed it to be omitted from the Solicitation Statement, rendering certain portions of the Solicitation Statement materially incomplete and therefore misleading.

44. The misrepresentations and omissions in the Solicitation Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

## COUNT II
### Violations of Section 14(d)(4) of the Exchange Act and Rule 14d-9 Promulgated Thereunder
**(Against All Defendants)**

45. Plaintiff repeats and re-alleges each allegation set forth above as if fully set forth herein.

46. Defendants have caused the Solicitation Statement to be issued with the intention of soliciting stockholder support of the Tender Offer.

47. Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.

48. The Solicitation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which render the Solicitation Statement false and/or misleading.

49. Defendants knowingly, or with deliberate recklessness, omitted the material information identified above from the Solicitation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had

access to and/or reviewed the omitted material information in connection with approving the Tender Offer, they allowed it to be omitted from the Solicitation Statement, rendering certain portions of the Solicitation Statement materially incomplete and therefore misleading.

50. The misrepresentations and omissions in the Solicitation Statement are material to Plaintiff and Plaintiff will be deprived of his entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

## COUNT III

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

51. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

52. The Individual Defendants acted as controlling persons of Oyster Point within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Oyster Point, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Solicitation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Oyster Point, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

53. Each of the Individual Defendants was provided with or had unlimited access to copies of the Solicitation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

54. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Oyster Point, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Solicitation Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Solicitation Statement.

55. In addition, as the Solicitation Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Solicitation Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

56. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

57. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(d) and (e), by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

58. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Solicitation Statement;

A. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

B. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

C. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: December 1, 2022　　　　　　　　　　**MELWANI & CHAN LLP**

　　　　　　　　　　　　　　　　　　　　　　/s *Gloria Kui Melwani*
　　　　　　　　　　　　　　　　　　　　　　Gloria Kui Melwani (GM5661)
　　　　　　　　　　　　　　　　　　　　　　1180 Avenue of the Americas, 8th Floor
　　　　　　　　　　　　　　　　　　　　　　New York, New York 10036
　　　　　　　　　　　　　　　　　　　　　　Tel: (212) 382-4620
　　　　　　　　　　　　　　　　　　　　　　Email:  gloria@melwanichan.com

　　　　　　　　　　　　　　　　　　　　　　*Attorneys for Plaintiff*